Booth, Judge,
delivered the opinion of the court.
The plaintiff company in September and October, 1916, upon lawful requests therefor, transported 3,206 enlisted men and officers of the Army from Camp Glenn, N. C., to Fort Bliss, Tex. The plaintiff on its own initiative presented to the disbursing quartermaster of the Army its bill for this transportation service. In this bill as thus presented the plaintiff asked pay at the rate of $43.71 for each individual carried, and the disbursing officer paid the same in full, viz: $140,134.26. Some time later the disbursing officer contended that he had made an error in allowing and paying this amount, that, as m'atter of fact the plaintiff was only entitled to be paid $42.82 per capita for the service *521 rendered, and demanded an immediate refund of $2,853.34, the amount of the alleged overpayment. The plaintiff declined to concede the error 'and refused repayment, whereupon, on December 15, 1917, the disbursing officer notified the plaintiff by letter that a refund must be made in 10 days or the passenger and freight accounts of the company would be held up and said amount deducted therefrom. Plaintiff, notwithstanding this warning, still refused to refund the $2,853.34. Finally, on January 16, 1918, the disbursing officer notified the plaintiff that on- that day all the accounts of the plaintiff would be held up until this amount was paid. Subsequent to the receipt of this last notice plaintiff refunded, under protest, the sum of $2,853.34 to the disbursing officer. The plaintiff now sues, not only for the said sum repaid 'as aforesaid, but for the additional sum of $3,270.12 which it asserts is due because of its own mistake in originally presenting its bill at the rate of $43.71 per capita, instead of $44.73 per capita, the lawful rate it was entitled to charge and collect.
The plaintiff insists that it has earned and is entitled to collect for each soldier transported as above the sum of $44.73. This rate is arrived at by recourse to the lowest individual fare, i. e., through fare open to the public in accord with the tariffs on file with the Interstate Commerce Commission, from Camp Glenn, N. C., to Fort Bliss, Tex., as modified by the Interterritorial Military Arrangment dated December 28, 1916, effective January 1, 1917.
It will be observed that all the service furnished, for which claim is made, was accomplished in September and October, 1916, and manifestly an agreement effective January 1, 1917, could not apply thereto, unless by its own terms, or some other agreement, it is made to operate retroactively. The plaintiff, therefore, contends that Supplement No. 1 dated June 2, 1917, to the agreement effective January 1, 1917, was intended for this precise purpose, and does by its own express terms reach back and cover the proper rate per capita applicable to this case. Unfortunately for the plaintiff the history of the origin and purpose of Supplement No. 1 absolutely negatives its contention. The face of Supplement No. 1 discloses its purpose.
*522 A decision of this court in the case of Union Pacific R. R. v. United States, 52 C. Cls., 226; 249 U. S. 354, had precluded the classification of the National Guard organizations (State Militia), as well as others mentioned in the supplement, as troops of the United States, and hence Government transportation of the same could not be exacted on the basis of land grant carriage. When this condition of affairs was put before the accredited representatives of the respective railroads affected by the Interterritorial Military Arrangement of January 1, 1917, the Supplement No. 1 was made and entered into to put this class of persons, temporarily closely identified and connected with the Army and Navy, upon the same basis as the officers and enlisted men of the [Regular Army and Navy. It had no general application and was not intended to affect any other class of persons save those specifically mentioned. Inasmuch as many railroads had transported this particular class of individuals, and had not at the time of its going into effect received its pay therefor, provision was made for payment of all unsettled accounts on the basis of the agreement of January 1, 1917, and to this extent, and to this extent only, it operated retroactively. No more convincing proof could be adduced to sustain this construction than the patent fact that no other amendment of the agreement was either sought or suggested. The railroads affected were content with the arrangement, an arrangement which operated to their advantage during the war.
Keeping in mind the date of Supplement No. 1, it will be noticed that it was executed June 2, 1917, coincident with the proclamation of the President of the United States calling out the National Guard for mobilization for the war with Germany, to be effective from June 18; 1916. Therefore, it was apparent to both the railroads and the Government that this vast increase in the transportation of men to the training camps and places of rendezvous, to ultimately become soldiers of the United States, should be provided for. We have said it was to' the temporary advantage of the railroads, and so it was, for the abnormal increase in number more than supplied the loss in rate of fare. If anything more need be said 'in the process of demonstration, it is sufficient to observe that the supplemental agreement, after *523 having served its temporary purpose, was duly abrogated by the contracting parties. The transportation furnished in this instance was not of this class. On the contrary, it was furnished for officers and enlisted men of the Regular Army on their way to the Mexican border, and therefore furnished under the Interterritorial Military Arrangement effective July 1, 1916. Supplement No. 1 was totally unnecessary if intended to provide for the transportation of United States troops and property, as the agreement of 1916 then in force provided exclusively for the transportation of such troops and property.
The defendant in demanding the refund of $2,853.34 finally paid by the plaintiff on January 16, 1918, predicated its demand upon the terms of the Interterritorial Military Arrangement of July 1, 1916. In other words, the defendant ascertained the existence of a party fare duly published from Camp Glenn, N. C., to Goldsboro, N. C., and from Goldsboro to Vicksburg, Miss. These two party fares were added together, and with the additional individual fare from Vicksburg to Fort Bliss, Tex. (the latter not here involved in any way) totaled $42.65. The correctness of this fare, if legally allowable, is conceded. It seems quite clear that; by the express provisions of the foregoing agreement there was available to the defendant the undoubted right to demand the service rendered at the rate of fare it was willing to and finally did pay. The defendant did not, as a matter of fact, combine two party fares. What it did was to pay two party fares, one from Camp Glenn to Goldsboro, and the other from Goldsboro to Vicksburg, the basing point. If the party fares between the above-mentioned points were not authorized as one party fare to or from such basing point, i. e., Vicksburg, Miss., obviously only an individual through rate was available to the defendant, but the Southeastern Joint Party Tariff K 2, I. C. C., F-2660, did authorize this method of ascertaining Government rates, and the plaintiff was a participating carrier in the same, and as such was obligated By the provisions of the Southeastern Joint Party Tariff. It seems to us that the defendant was clearly right in making the deduction. The plaintiff was apparently misled in the belief that Supplement No. 1 applied to Regular *524 Army officers and enlisted men, and thereby applied to the transportation service here involved.
It only remains to say that under the recent decisions oí this court in the cases of Western Pacific Ry., ante, p. 67; Southern Pacific Co., ante., p. 36; and Northern Pacific Ry., ante, p. 122, the amount involved in the sum refunded could not be recovered in any event. The refund, while made under written orders calculated to produce some degree of coercion and fear, was, nevertheless, made under orders of an officer of the Government who was without authority to issue such peremptory orders and commands. The officer who made the threat had a very simple duty under the law to perform. He must either pay the bill as rendered, or not at all. He had no authority to order a refund, and the plaintiff had open to it a definitely marked out course to pursue in the accounting department of the Government, irrespective of the verbal or written offerings of the disbursing officer. We need not suggest again the course that should have been taken. It was sufficiently emphasized in the cases referred to.
In view of what has been said we- think it unnecessary to discuss the claim for an alleged mistake in rendering the bills for the service rendered. If we are correct in our view of the case, this item of the claim follows the result of our judgment.
The petition will be dismissed. It is so ordered.
Graiiam, Judge; Hay, Judge; DowNey, Judge, and Campbell, Chief Justice, concur.